UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PATRICIA WOODELL, | CASE NO. C19-0051JLR |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |
| v. | |
| EXPEDIA INC, et al., | |
| Defendants. | |

## I.    INTRODUCTION

Before the court is Defendants Expedia, Inc. ("Expedia"), EAN.com, LP ("EAN"),
Travelscape, LLC ("Travelscape"), and Hotels.com, L.P.'s ("Hotels.com") (collectively,
"Defendants") motion to dismiss Plaintiff Patricia Woodell's putative class action
complaint.  (MTD (Dkt. # 15).)  Ms. Woodell opposes the motion.  (Resp. (Dkt. # 37).)
The court has considered Defendants' motion, all submissions filed in support of and in
opposition to the motion, the relevant portions of the record, and the applicable law.

//

Being fully advised,[1] the court GRANTS in part and DENIES in part Defendants' motion and DISMISSES Ms. Woodell's complaint. The court also GRANTS Ms. Woodell leave to amend her complaint within 20 days of the date of this order.

## II. BACKGROUND

In her putative class action complaint, Ms. Woodell alleges as follows:

Consumers book hotels online "primarily for convenience and in order to shop for the best price." (Compl. (Dkt. # 1) ¶ 1.) Reservations.com, which is not a party to this lawsuit, is an online booking company. (*Id.* ¶¶ 2, 21.) Reservations.com obtains its hotel room inventory from third-party suppliers such as Expedia and its subsidiaries, including EAN, Travelscape, and Hotels.com. (*Id.* ¶¶ 2, 22.) Hotels give Defendants the right to sell their room reservations at retail rates generally set by Defendants. (*Id.* ¶ 3.)

When a consumer purchases a room reservation on Reservations.com's website or through its call center, the consumer pays a "Service Fee" of $14.99 per room to Reservations.com. (*Id.* ¶¶ 4, 29, 32.) In addition, the consumer pays an amount to Defendants, which is generally labelled as "Taxes & Fees." (*See id.* ¶¶ 4, 29) Ms. Woodell alleges that the "Taxes & Fees" "are represented to be monies 'the hotels must pay to the government,'" but "even without this representation[,] a reasonable consumer would understand 'Taxes & Fees' to be monies owed to the government." (*Id.* ¶ 4, 33, 34.) When Reservations.com sells a room reservation from Defendants' inventory, the

//

---

[1] No party has requested oral argument (*see* MTD; Resp.), and the court does not consider oral argument to be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

consumer's credit card is charged $14.99 by Reservations.com, and the balance—the room charge plus the "Taxes & Fees" charge—is charged by Defendants. (*Id.* ¶¶ 4, 35.) Ms. Woodell's complaint addresses solely the "Taxes & Fees" charges collected by Defendants. (*Id.* ¶ 5.)

Ms. Woodell alleges that "[c]ontrary to Reservations.com's representations and/or the expectations of consumers, the 'Taxes & Fees' charged by Defendants are not the actual taxes and fees remitted to governmental authorities but contain additional amounts surreptitiously added by Defendants (the 'tax overcharge')." (*Id.* ¶ 6; *see also id.* ¶ 39.) Ms. Woodell generally alleges that Defendants "populate[]" the room rates and "Taxes & Fees" fields on the Reservation.com website and "unlawfully collect and retain the 'Taxes & Fees' overcharge." (*Id.* ¶¶ 9, 10; *see also id.* ¶ 23.) Ms. Woodell specifically alleges that "the room rates and 'Taxes & Fees' charged on the Reservations.com website are pass-through line items established and collected by Expedia." (*Id.* ¶ 36.) She further generally alleges that Defendants remit some of the "Taxes & Fees" charge to the hotels, or sometimes directly to the governmental taxing authorities, but they retain the tax overcharge. (*Id.* ¶¶ 10, 23.) More specifically, however, Ms. Woodell asserts that "Expedia . . . remits the applicable taxes and fees to either the hotels or, in some jurisdictions, to the government," and "Expedia pockets the tax overcharge as additional profit (above and beyond the 'markup' it already makes on the room price)." (*Id.* ¶¶ 36, 39.)

Ms. Woodell has not sued Resevations.com. (*See generally id.*) Indeed, she admits that Reservations.com is not involved in the collection of the "Taxes & Fees"

charge at issue in this case or the remission process. (*Id.* ¶ 23.) However, Ms. Woodell contends that Defendants have "engaged and continue to engage in a scheme to unlawfully collect overcharges of taxes and fees through the use of online travel agents, including but not limited to, Reservations.com." (*Id.* ¶ 40.) She also alleges "[o]n information and belief, Reservations.com has, at all relevant times hereto and continuing through the present, been a knowing and willing participant in this scheme with [Defendants]." (*Id.*)

Concerning her specific experience, Ms. Woodell alleges that on September 12, 2016, she booked a hotel room in Boise, Idaho, on the Reservations.com website, and paid a total of $111.12 for the reservation. (*Id.* ¶¶ 46, 52.) Two charges—totaling $111.12—appeared on her credit card statement. (*See id.* ¶¶ 49-50.) Ms. Woodell paid $14.99 for a "Service Fee" to Reservations.com, and $96.23, which included $81.41 for the room and $14.82 for "Taxes & Fees," to Expedia. (*Id.* ¶¶ 47, 49-50.) Ms. Woodell asserts that the total applicable taxes and fees that must be paid to the government for her hotel reservation totaled $6.51, and therefore she was overcharged by $8.31. (*Id.* ¶ 48; *see also id.* ¶ 8 ("Expedia subjected [Ms. Woodell] to a tax overcharge in 2016.").) She further alleges that because Reservations.com charges a $14.99 per room "Service Fee," the difference between the "Taxes & Fees" charged and actual taxes paid to governmental entities "cannot reasonably be understood to be for 'services.'" (*Id.* ¶ 61.) Ms. Woodell alleges that a similar tax overcharge is applied to every reservation through Reservations.com that uses Expedia's room inventory, resulting in millions of dollars of overcharges annually throughout the United States. (*Id.* ¶¶ 53-63.)

Ms. Woodell alleges that the "Taxes & Fees" portion of her bill is charged in a manner "[c]ontrary to Reservations.com's representations and/or the expectations of consumers." (*Id.* ¶ 6; *see also id.* ¶ 39.) However, Ms. Woodell does not allege that she noticed the "Taxes & Fees" charge at the time of booking, that the charge factored into her decision to book the hotel room at issue, that she was confused by the charge, how she interpreted the charge, or whether the charge would have made a difference in her decision to book the hotel room if she had noticed it and understood it differently at the time of booking. (*See generally id.*) As noted above, she alleges that consumers book hotels online "primarily for convenience and in order to shop for the best price" (*id.* ¶ 1), and she does not allege that any other considerations motivated her at the time she made her booking on September 12, 2016 (*see generally id.*)

Ms. Woodell alleges that non-party Reservations.com has, "[a]t times," explained "Taxes & Fees" as follows:

> The taxes are tax recovery charges we pay to our vendors. We retain our service fees and compensation in servicing your travel reservation. *Amounts displayed in the Taxes and Fees line for prepaid hotel transactions include an estimated amount we expect the hotel to bill for applicable taxes, government fees, and other charges that the hotels must pay to the government.* Please note that you may also incur other charges that we do not collect and are not included in the quotes price, such as hotel resort fees, hotel energy surcharges, parking fees, pet fees, and incidental charges. These amounts will be collected from you directly by the hotel unless otherwise indicated on the site.

(*Id.* ¶ 33 (italics in complaint).) Ms. Woodell does not claim that she saw this alleged misrepresentation or that it was on the Reservations.com website at the time of her

//

booking.  (*See generally id.*)  She does not explain when or where Reservations.com made this alleged misrepresentation.  (*See generally id.*)

Ms. Woodell alleges that Reservations.com "hosts" its website and "does its own marketing of its services."  (*Id.* ¶ 18.)  She does not allege any communication, meeting, agreement, or moment in time when Defendants and Reservations.com agreed to coordinate regarding representations about the "Taxes & Fees" charge that appears on the Reservations.com website.  (*See generally id.*)

Ms. Woodell brings a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(C)-(D).  (Compl. ¶¶ 74-110.)  In doing so, she alleges that Defendants, along with Reservations.com and other entities, "associated with, and conducted or participated in the affairs of, a RICO enterprise (the 'Tax Fraud Enterprise'), whose purpose was to deceive consumers into believing they were paying a legitimate 'Taxes & Fees' charge."  (*Id.* ¶ 77.)  She alleges that Defendants and Reservations.com "operated an association-in-fact enterprise engaged in interstate and foreign commerce, which was formed for the purpose of obtaining money from consumers for inflated 'Taxes & Fees' payments, through which they conducted a pattern of racketeering activity under 18 U.S.C. § 1961(4)."  (Compl. ¶ 78.)  Alternatively, she alleges that non-party Reservations.com "constitutes a single legal entity 'enterprise' within the meaning of 18 U.S.C. § 1961(4), through which . . . Defendants conducted their pattern of racketeering activity in the [United States]."  (Compl. ¶ 79.)  She also alleges that Defendants committed at least two predicate acts of racketeering activity

//

involving mail and wire fraud under 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud).  (Compl. ¶ 94-110.)

In addition to her RICO claim, Ms. Woodell asserts a claim for violation of Washington's Consumer Protection Act ("CPA"), RCW ch. 19.86.  (Compl. ¶¶ 132-40.) She also asserts equitable claims of conversion (*id.* ¶¶ 111-16), unjust enrichment (*id.* ¶¶ 117-24), and constructive trust (*id.* ¶ 125-31).  Defendants move to dismiss each of Ms. Woodell's claims.  (*See generally* MTD.)  The court now considers Defendants' motion.

### III.    ANALYSIS

**A.    Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  The court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677-78. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557). General, conclusory allegations of wrong-doing that do not identify how each defendant purportedly engaged in the wrongful conduct and do not provide each defendant fair notice of the claims against them do not meet the Supreme Court's *Iqbal/Twombly* pleading standard. *See Trice v. Damion*, No. 216CV01348MMDNJK, 2017 WL 187149, at *2 (D. Nev. Jan. 17, 2017) (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555); *see also Doop v. Woodford*, No. 1:14CV01933 DLB PC, 2015 WL 2345314, at *2 (E.D. Cal. May 14, 2015) ("Plaintiff cannot simply group all Defendants together and allege, generally, that they violated his rights. Such statements do not meet the pleading requirements.") (citing *Iqbal*, 556 U.S. at 678). Dismissal under Rule 12(b)(6) may also be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Claims of fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. P. 9(b). Under Rule 9(b), "a party must

state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Rule 9(b) requires that an allegation of fraud be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* at 1106 (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). In other words, an allegation of fraud "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.'" *Id.* (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). The plaintiff must identify "what is false or misleading about the statement, and why it is false." *Id.* (quoting *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

**B.    RICO**

Under RICO, a plaintiff must allege that the defendant participated in the conduct of an enterprise through a pattern of racketeering activity that proximately caused the plaintiff's harm. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Defendants argue that Ms. Woodell's RICO claim fails because she inadequately alleges the following elements: (1) any racketeering activity; (2) a pattern of such activity; (3) an enterprise; (4) that Defendants directed the conduct of an enterprise; and (5) proximate causation. The court will consider each of these elements in turn.

//

1    1. <u>Racketeering Activity</u>

2        Ms. Woodell bases her RICO claim on mail and wire fraud as the alleged

3    underlying racketeering activity.  (*See* Compl. ¶¶ 94-102); *see also* 18 U.S.C. §§ 1341

4    (mail fraud), 1343 (wire fraud).  Because she bases her RICO claim on fraud, her

5    allegations must comply with Federal Rule of Civil Procedure 9(b), which requires that

6    circumstances constituting fraud be stated with particularity.  Fed. R. Civ. P. 9(b); *see*

7    *Alan Neuman Prods, Inc. v. Albright*, 862 F.3d 1388, 1392-93 (9th Cir. 1989)

8    (concluding that a complaint failed to properly allege a RICO claim based on mail and

9    wire fraud because the allegations were not sufficiently particular to satisfy Rule 9(b));

10   *Bitton v. Gencor Nutrientes, Inc.*, 654 F. App'x 358, 363 (9th Cir. 2016) ("Circumstances

11   constituting fraud must be pleaded with particularity; that is also the case when alleged

12   fraud forms the predicate acts of a RICO claim.") (internal quotation marks and citations

13   omitted); *Desoto v. Condon*, 371 F. App'x 822, 824 (9th Cir. 2010) (affirming the district

14   court's dismissal of the plaintiff's RICO claim because the allegations concerning the

15   predicate acts of mail and wire fraud were too vague and conclusory).

16       Defendants argue that Ms. Woodell fails to plead Defendants' alleged racketeering

17   activity—mail and wire fraud violations—with sufficient particularity.  "The mail and

18   wire fraud statutes are identical except for the particular method used to disseminate the

19   fraud, and contain three elements:  (A) the formation of a scheme to defraud, (B) the use

20   of the mails or wires in furtherance of that scheme, and (C) the specific intent to

21   defraud."  *Eclectic Props. E.*, 751 F.3d at 997 (citing *Schreiber Distrib. Co. v. Serv-Well*

22   *Furniture Co., Inc.*, 806 F.2d 1393, 1399 (9th Cir. 1986)).

*a. Mail Fraud*

Nowhere in her complaint does Ms. Woodell allege any specific use of the mails in furtherance of a fraudulent scheme.  (*See generally* Compl.)  At most, she generally alleges:

> [Defendants and Reservations.com] violated 18 U.S.C. § 1341 by sending and receiving, and by causing to be sent and/or received, materials via U.S. Mail or commercial interstate carriers for the purpose of executing the unlawful scheme to design, manufacture, market, and sell hotel room reservations by means of false pretenses, misrepresentations, promises, and omissions.

(Compl. ¶ 97(a); *see also id.* ¶ 100 ("[Defendants and Reservations.com] also communicated by U.S. Mail, by interstate facsimile, and by interstate electronic mail with various other divisions of Expedia, Inc., and other third-party entities in furtherance of the scheme.").)  Ms. Woodell must plead both the alleged fraud and facts relating to the alleged use of the mails.  *Vaugh v. Diaz*, No. 12-CV-1181 BEN JMA, 2013 WL 150487, at *3 (S.D. Cal. Jan. 14, 2013) (citing *Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991)).  General allegations concerning the use of the mails is insufficient.  *See Lancaster Comm. Hosp.*, 940 F.2d at 405 (finding that contentions regarding the use of the mails were too generalized to satisfy Rule 9(b) where "no specific mailings are mentioned"); *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070 (C.D. Cal. 2011) ("Courts have been particularly sensitive to Fed. R. Civ. Pro. 9(b)'s pleading requirements in RICO cases in which the 'predicate acts' are mail fraud and wire fraud, and have further required specific allegations as to which defendant caused what to be mailed . . . , and when and how each mailing . . . furthered the

fraudulent scheme" (citing *Gotham Print, Inc. v. Am. Speedy Printing Ctrs., Inc.*, 863 F. Supp. 447, 457 (E.D. Mich. 1994)). Accordingly, the court dismisses Ms. Woodell's RICO claim predicated on the alleged racketeering activity of mail fraud.

### b. Wire Fraud

The court next considers the adequacy of Ms. Woodell's pleading concerning the alleged racketeering activity of wire fraud. Specifically, Ms. Woodell alleges that "the . . . 'Taxes & Fees' charged on the Reservations.com website are pass-through items established and collected by Expedia." (Compl. ¶ 23.) She also alleges that "the amount charged by Expedia on Reservations.com bookings as . . . 'Taxes & Fees' . . . is significantly more than the sum actually owed to the government for 'applicable taxes, government fees, and other charges that he hotels must pay to the government.'" (*Id.* ¶ 39.) She further alleges, on information and belief, that "Expedia pockets the tax overcharge as additional profit (above and beyond the 'markup' it already makes on the room price)." (*Id.*) Finally, she alleges that this scheme has been repeated millions of times through the Reservations.com website. (*Id.* ¶ 12, *see also id.* ¶¶ 53-63.) These allegations meet the Rule 9(b) pleading requirement of "sufficient particularity" for asserting a predicate act of wire fraud in a RICO claim against Expedia.

In other portions of the complaint, however, Ms. Woodell charges Defendants collectively with this same conduct. (*See, e.g.*, *id.* ¶ 9 ("[T]he room rates and 'Taxes & Fees' are fields populated on the Reservations.com website by Defendants. At the time of booking, Defendants collect the 'Taxes & Fees' charge directly from Reservations.com's customers, and Defendants later remit the (much lower) actual taxes

and fees to either the hotels or—in some jurisdictions—directly to the government."); *id.* ¶ 10 ("As part of the tax overcharge scheme, Defendants unlawfully collect and retain the 'Taxes & Fees' overcharge."); *see also id.* ¶¶ 94-110 (alleging that Defendants and Reservations.com engaged in wire fraud without attributing any specific conduct to any specific Defendant).)  "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D.Fla.1998) (citation, quotation omitted)).  At a minimum, a plaintiff must identify the role of each defendant in the alleged fraudulent scheme.  *Id.* at 765. Thus, although Ms. Woodell's specific allegations concerning Expedia are sufficient, her generalized allegations—lumping the three remaining Defendants together with respect to the same conduct—are not.

Ms. Woodell counters that the Rule 9(b) standard may be "relaxed as to matters within the opposing party's knowledge."  (Resp. at 9 (quoting *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)).)  She also argues that she alleges with specificity the roles each Defendant played (*see* Resp. at 9), as follows:  For Travelscape, she alleges that it "contracts with hotel properties for room inventory at wholesale prices," which, in turn, is offered for sale by Reservations.com.  (Comp. ¶¶ 19, 83.)  She also alleges that Travelscape "administers payments for reservations" made through Reservations.com.  (*Id.*)  For EAN, she alleges that it "contracts with . . .

Reservations.com . . . to provide . . . third parties with hotel room inventory" obtained by Expedia, Travelscape, and Hotels.com.  (*Id.* ¶¶ 18-20, 82.)  For Hotels.com, Ms. Woodell alleges that it "provides room inventory to Reservations.com and/or collects monies paid for room reservations sold by Reservations.com."  (Compl. ¶ 20.)

However, the "relaxation" of the Rule 9(b) particularized pleading requirement for matters within the opposing party's knowledge "does not nullify Rule 9(b)."  *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  Indeed, "a plaintiff who makes allegations on information and belief must state the factual basis for this belief."  *Id.* Alleging "no more than suspicious circumstances" is insufficient.  *Id.*  Here, Ms. Woodell has not even alleged suspicious circumstances with respect to Travelscape, EAN, and Hotels.com.  The specific conduct she alleges regarding each of these Defendants does not inform them of their "alleged participation in the fraud," *Swartz*, 476 F.3d at 764-65, which in this case is Expedia's purported misrepresentation on Reservations.com's website regarding the "Taxes & Fees" charge.  Rather, her allegations describe nothing more than legitimate business conduct—contracting for hotel room inventory at wholesale prices and administering payments for reservations. (*See* Compl. ¶¶ 18-20, 82-83.)  Accordingly, the court concludes that Ms. Woodell has failed to plead wire fraud as a predicate act for her RICO claim with sufficient particularity to satisfy Rule 9(b) for Defendants Travelscape, EAN, and Hotels.com and, therefore, grants Defendants' motion with respect to these Defendants. [2]

---

[2] The authorities Ms. Woodell cites are distinguishable.  In *In re Volkswagen*, No. MDL 2672 CRB (JSC), 2017 WL 4890594, at *10 (N.D. Cal. Oct. 30, 2017), *In re*

## 2. A Pattern of Racketeering Activity

A "pattern" of racketeering activity requires "at least two acts of racketeering activity" within ten years of each other, 18 U.S.C. § 1961(5), and a related "threat of continuing activity," *Howard v. Am. Online, Inc.*, 208 F.3d 741, 746 (9th Cir. 2000). Defendants assert that "[f]or the same reasons she failed to adequately allege any racketeering activity, [Ms.] Woodell fails to adequately allege a *pattern* of racketeering activity." (MTD at 9.)

With respect to Expedia, the court disagrees. Ms. Woodell alleges that as many as four million rooms were booked on Reservation.com's website during the class period and a "substantial portion of these rooms came from Expedia's inventory." (Compl. ¶ 67; *see also id.* ¶ 53 ("On information and belief, a similar [tax overcharge] is applied to every reservation booked through Reservations.com that uses Expedia's room inventory, and Expedia is illegally retaining millions of dollars in overcharges annually as a result.").) These allegations plausibly allege a "pattern" of racketeering activity for Expedia. Of course, because the court has held that Ms. Woodell failed to adequately plead any racketeering activity for Defendants Travelscape, EAN, and Hotels.com, *see supra* § III.B.2, she logically also fails to allege a pattern of such activity for them.

---

*Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, & Product Liability Litigation*, 295 F. Supp. 3d 927, 977 (N.D. Cal. 2018), and *In re Duramax Diesel Litigation*, 298 F. Supp. 3d 1037, 1057 (E.D. Mich. 2018), the courts excused the plaintiffs' "lumping together" of certain defendants due to the manner in which those defendants "chose[] to operate" by blurring the legal boundaries between the corporate subsidiaries. Thus, under those circumstances, it was reasonable for the courts to plausibly infer that the knowledge of one defendant could be attributed to other defendants. *See, e.g.*, *In re Volkswagon*, 2017 WL 4890594, at * 11. That type of corporate integration or blurring of corporate entities is not alleged here. (*See generally* Compl.)

1    Accordingly, the court grants this portion of Defendants' motion for Travelscape, EAN,

2    and Hotels.com, but denies it for Expedia.

3        3. <u>RICO Enterprise</u>

4        Defendants also argue that Ms. Woodell fails to adequately allege a RICO

5    Enterprise. (MTD at 9-11.) RICO enterprises come in two varieties: (1) an

6    association-in-fact, or (2) a "legal entity." *See* 18 U.S.C. § 1961(4). An

7    association-in-fact is a "group of persons associated together for a common purpose of

8    engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009). A

9    "legal entity" applies to the "infiltration of legitimate businesses [the enterprise] by

10    racketeers [the defendants]." *River City Mkts., Inc. v. Fleming Foods W., Inc.*, 960 F.2d

11    1458, 1461 (9th Cir. 1992) (citing *United States v. Turkette*, 452 U.S. 576, 580 (1981).

12    Ms. Woodell alleges both types of enterprises in the alternative. (*See* Compl. ¶¶ 78-79.)

13        *a. Association-in-fact*

14        To plead an association-in-fact enterprise, Ms. Woodell must allege that the

15    association-in-fact: (1) has a common purpose, (2) is an ongoing organization, and (3)

16    its various associates function as a continuing unit. *See Odom v. Microsoft*, 486 F.3d

17    541, 552-53 (9th Cir. 2007). Further, Ms. Woodell "must allege that the group engaged

18    in enterprise conduct distinct from their own affairs*." Comm. to Protect our Agric.*

19    *Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1173 (E.D. Cal. 2017)

20    (citing *Odom*, 486 F.3d at 549)). Ms. Woodell alleges that Defendants and

21    Reservations.com formed an association-in-fact enterprise. (*See* Compl. ¶ 86.) As

22    //

discussed below, Ms. Woodell fails to adequately allege that this putative

association-in-fact has a common purpose.

Ms. Woodell pleads that Defendants and Reservations.com "associated for the common purpose of obtaining tax overpayments from consumers." (*Id*. ¶ 85.) However, this and other similar, conclusory allegations fall short of the pleading standard.[3] Except for the allegation that Expedia established and collected the "Taxes & Fees" charge as "pass-through line items" on Reservations.com's website (*id*. ¶ 36), the complaint contains no specific factual allegations that any other Defendant acted with an objective unrelated to ordinary business aims (*see generally id.*). Ms. Woodell's formulaic, conclusory allegations concerning these Defendants[4] are insufficient to create facial plausibility concerning an association-in-fact. *See Iqbal*, 556 U.S. at 678. Indeed, Ms. Woodell admits in her complaint that the alleged enterprise "functioned by selling hotel room reservations to the consuming public," and that such "bookings are legitimate transactions." (*Id.* ¶ 86; *see also id.* ¶¶ 87 (alleging that the enterprise "involved commercial activities . . . including the marketing, promotion, advertisement, and sale of hotel room reservations throughout the country, and the receipt of monies from the hotel bookings."); 92 ("The enterprise involved commercial activities . . . such as the

---

[3] (*See also* Compl. ¶ 86 ("Expedia and its co-conspirators, through their illegal Tax Fraud Scheme, engaged in a pattern of racketeering activity, which involves a fraudulent scheme to increase revenue for Expedia and the other entities and individuals associated-in-fact with the Enterprise's activities through the illegal scheme to collect tax overpayments.").)

[4] (*See, e.g.*, Compl. ¶ 78 (alleging that Defendants and Reservations.com "operated an association-in-fact enterprise . . . which was formed for the purpose of obtaining money from consumers for inflated 'Taxes & Fees' payment, through which they conducted a pattern of racketeering activity").)

marketing, promotion, advertisement, and sale of hotel room reservations throughout the country, and the receipt of monies from those sales.").)

Allegations that are consistent with ordinary business activities or purposes are insufficient when pleading an association-in-fact RICO enterprise. *See In re Jamster Mktg. Litig.*, No. 05CV0819 JM (CAB), 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) (finding RICO claims were not adequately pleaded because, after plaintiff's legal conclusions were set aside, all that remained was "conduct consistent with ordinary business conduct and an ordinary business purpose"); *see also Gomez v. Guthy-Renker, LLC*, No. EDCV1401425JGBKKX, 2015 WL 4270042, at *8-9 (C.D. Cal. July 13, 2015) (finding that a routine contract for services did not constitute a distinct enterprise); *cf. Odom*, 486 F.3d at 543 (finding a RICO enterprise's common purpose was adequately pleaded where the complaint alleged specific facts describing the fraudulent means used to carry out the scheme). Where the alleged association-in-fact is formed through routine contracts for services, the "common purpose" element is unmet because the entities are pursuing their own individual economic interests, rather than a shared purpose. *See Gomez*, 2015 WL 4270042, at *9 (citing *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, No. 2:11-CV-07166-MRP, 2012 WL 10731957, at *8 (C.D. Cal. June 29, 2012) ("[F]rom the face of the [amended complaint] it appears that each of the non-parties identified by [the plaintiff] entered into a business relationship for their own commercial reasons. Even if . . . the non-parties' actions assisted [the defendant] . . . . the [amended complaint] makes clear that the assistance was in response to each entity's own business incentives. Parties that enter commercial relationships 'for their

own gain or benefit' do not constitute an 'enterprise.'").)  Based on the foregoing

authorities, the court concludes that Ms. Woodell fails to adequately allege a "common

purpose" for her association-in-fact.  *See Odom*, 486 F.3d at 552-53.  Accordingly, the

court grants this portion of Defendants' motion.

### b. *Legal Entity*

Ms. Woodell alternatively argues that non-party Reservations.com is a single legal

entity enterprise through which Defendants conducted a pattern of racketeering activity.

(*See* Resp. at 13.)  Insofar as 18 U.S.C. § 1961(4) defines an "enterprise" to include any

"partnership, corporation . . . or other legal entity . . . ," Ms. Woodell is correct.  *See*

*Gov't Emps. Ins. Co. v. KJ Chiropractic Ctr. LLC*, No. 612CV1138ORL40DAB, 2015

WL 12839139, at *2 (M.D. Fla. Feb. 16, 2015) ("Under the statute, it cannot be disputed

that [the corporate defendant] constitutes an enterprise within the meaning of 18 U.S.C. §

1961(4) because it is a legal entity.").  Accordingly, the court denies this portion of

Defendants' motion.  The difficulty with this allegation, however, arises in the next

element of Ms. Woodell's RICO claim—namely, whether Defendants "conduct[ed] or

participate[d], directly or indirectly, in the conduct of such enterprise's affairs."  *See* 18

U.S.C. § 1964(c).

### 4. Directed the Conduct of a RICO Enterprise

The "conduct" element of a RICO claim requires Ms. Woodell to allege that a

defendant has "some part in the directing of the enterprise's affairs."  *Reves v. Ernst &*

*Young*, 507 U.S. 170, 179 (1993).  Ms. Woodell fails to allege facts supporting a

plausible theory that Defendants "participated in the conduct of the '*enterprise*'s affairs,'

not just their *own* affairs." *See id.* at 185 (quoting 18 U.S.C. § 1962(c)) (emphasis in *Reves*); *see also id.* (holding that "to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs" under 18 U.S.C § 1962(c), requires "participat[ing] in the operation or management of the enterprise itself").

Once again, at most, Ms. Woodell alleges that Expedia establishes and collects the "Taxes & Fees" charge as "pass-through line items" on Reservations.com's website. (*See* Compl. ¶ 36.) This alleged action does not amount to participation in the operation or management of Reservations.com as a "legal entity" enterprise or Ms. Woodell's alleged association-in-fact enterprise. This is particularly so in light of her allegations that Reservations.com hosts its own website, "does its own marketing of its services," and obtains its inventory of hotel reservations through multiple third-party suppliers and not just through Defendants. (*Id.* ¶¶ 2, 18, 22-23, 82.) Ms. Woodell's remaining allegations are all too general and conclusory to meet the pleading standard and raise this element of her claim from the merely possible to the plausible.[5] *See Iqbal*, 556 U.S. at 678.

Specifically, Ms. Woodell has not adequately alleged that Defendants' actions "were undertaken on behalf of the *enterprise* as opposed to on behalf of [Defendants] in their individual capacities, to advance their individual self-interests." *United Food &*

//

---

[5] (*See, e.g.*, Compl. ¶¶ 77 (alleging that Defendants "were associated with, and conducted or participated in the affairs of, a RICO enterprise . . . , whose purpose was to deceive consumers into believing they were paying a legitimate 'Taxes & Fees' charge."); 78 (alleging Defendants "operated an association-in-fact enterprise"); 90 (alleging Defendants "participated in the operation and management of [the enterprise] by directing its affairs").)

*Commercial Workers Unions & Emp'rs. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013). In *Walgreen*, an employee health benefit fund alleged that a pharmaceutical company and drug manufacturer engaged in a scheme to defraud insurers by filling prescriptions for generic drugs with more expensive dosages than prescribed, in violation of RICO. *Id.* at 850. The *Walgreen* court explained that "[t]he complaint d[id] not allege, for instance, that officials from either company involved themselves in the affairs of the other," among other things, but instead defendants' interactions "show[ed] only that the defendants had a commercial relationship." *Id.* at 855. The court finds this analysis persuasive here and concludes that Ms. Woodell fails to adequately allege that Defendants directed the affairs of a RICO enterprise. Accordingly, the court grants this portion of Defendants' motion.

5. Proximate Causation

"[A] plaintiff may sue under [RICO] only if the alleged RICO violation was the proximate cause of the plaintiff's injury." *Anza v. Ideal Steel Supply Co.*, 547 U.S. 451, 452 (2006); *see also Ally Bank v. Castle*, No. 11-CV-896 YGR, 2012 WL 3627631, at *12 (N.D. Cal. Aug. 20, 2012) ("[T]he plaintiff's injury must be proximately caused by defendant's commission of a predicate act, not by some other conduct of the defendant.") "Although proximate cause, not reliance, is the essential element of statutory standing under RICO, proving reliance is necessary where it is integral to [the plaintiff's] theory of causation." *Hoffman v. Zenith Ins. Co.*, 487 F. App'x 365, 365 (9th Cir. 2012) (citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 659 (2008)); see *Negrete v. Allianz Life Ins. Co. of N. Am.*, 287 F.R.D. 590, 606 (C.D. Cal. 2012) ("Without proving reliance

1  in some form, plaintiffs will be unable to demonstrate the causal linkage between the

2  defendant's alleged misrepresentations and the class members' injuries.").

3      Ms. Woodell alleges that a "reasonable consumer" would expect that a charge for

4  "Taxes & Fees" would consist of "amounts imposed by taxing authorities." (Comp.

5  ¶ 34.)  She alleges that she was "overcharged" $8.31 because she paid $14.82 in "Taxes

6  & Fees" when only $6.51 was due to the government.  (*Id.* ¶¶ 47-48.)  However, she does

7  not allege that she read or even noticed the "Taxes & Fees" charge at the time she made

8  her reservation.  (*See id.* ¶¶ 46-53 (describing Ms. Woodell's alleged experience using

9  Reservations.com).)  She does not allege that the charge would have affected her

10 transaction if she had noticed it or what she would have interpreted the phrase to mean if

11 she had seen it.  (*See id.*)  She does not allege that she would not have completed the

12 transaction had she understood that not all of the $14.82 listed under "Taxes & Fees"

13 would be paid to a governmental entity or that a portion of the $14.82 would be retained

14 by Expedia.  (*See id.*)  In short, she does not plead that, except for the alleged

15 misrepresentation concerning "Taxes & Fees," she would not have suffered an injury.  As

16 a result, the court concludes that Ms. Woodell fails to adequately allege proximate cause.

17     Ms. Woodell nevertheless argues that, under the Supreme Court's decision in

18 *Bridge,* "there is no reliance requirement . . . as a person can be injured by reason of a

19 pattern of . . . . mail fraud even if he has not relied on any misrepresentations . . . ."

20 (Resp. at 19 (citing *Bridge*, 553 U.S. at 649) (internal quotation marks omitted).)

21 Although this may be true, the Supreme Court also acknowledged that "[i]n most cases,

22 the plaintiff will not be able to establish even but-for causation if no one relied on the

misrepresentation." *Bridge*, 553 U.S. 658.  Where a plaintiff's theory of causation

depends on reliance, reliance is required to establish causation.  *See Hoffman*, 487 F.

App'x at 365.  Ms. Woodell nevertheless attempts to clear the but-for causation hurdle by

arguing that she relied on the "legitimacy" of the "Taxes & Fees" charge.  (Resp. at 19

(citing Compl. ¶¶ 106-07).)  Yet, she never alleges that she would not have made the

reservation, submitted her payment, or taken any other action had she known that a

portion of the "Taxes & Fees" charge was illegitimate.  (*See generally* Compl.)

Ms. Woodell also attempts to recast her theory as one of omission—rather than an

affirmative misrepresentation—arguing that she should be entitled to a presumption of

reliance.  (Resp. at 19, 22-23.)  However, the presumption of reliance has typically been

applied in securities fraud cases where a defendant is required to disclose something and

does not, so the plaintiff is presumed to have relied on the fact that there was no

disclosure.  *See Poulos v. Caesars World, Inc.*, 379 F.3d 654, 666 (9th Cir. 2004).  Even

if the presumption applies outside of that context, it does not apply to cases involving

affirmative representations or "mixed claims" of representations and omissions.  *Id.* at

667 (holding that there is no for presumption of reliance for a RICO claim that "cannot be

characterized primarily as claims of omission").  Ms. Woodell's RICO claim depends on

the alleged affirmative misrepresentation of the "Taxes & Fees" charge.  Thus, her theory

is at best "mixed" between alleged misrepresentations and omissions.  Accordingly, the

court concludes that a presumption of reliance is inapplicable.  Because Ms. Woodell

fails to adequately plead that her $8.31 injury was proximately caused by Defendants'

//

1  purported RICO violation, the court grants Defendants' motion and dismisses her RICO

2  claim.

3  **C.    CPA Claim**

4          To state a claim under the CPA, Ms. Woodell must allege:  (1) an unfair or

5  deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public

6  interest, (4) injury to a person's business or property, and (5) causation.  *Panag v.*

7  *Farmers Ins. Co.*, 204 P.3d 885, 889 (Wash. 2000) (citing *Hangman Ridge Stables, Inc.*

8  *v. Safeco Title Ins. Co.*, 719 P.3d 531, 535 (Wash. 1986)).  Defendants argue that Ms.

9  Woodell fails to adequately plead the first, third, and fifth elements.  (MTD at 14-18.)

10 The court considers these elements in turn.

11         1.  <u>Unfair or Deceptive Act</u>

12         An unfair or deceptive act is one undertaken with "a capacity to deceive a

13 substantial portion of the public."  *Saunders v. Lloyd's of London*, 779 P.2d 249, 256

14 (Wash. 1989) (quoting *Hangman Ridge*, 719 P.2d at 535).  Ms. Woodell relies on the

15 same factual allegations to underpin her CPA claim as she does to underpin her RICO

16 claim—alleged misrepresentation regarding "Taxes & Fees."  (*See, e.g.*, Compl. ¶¶ 132-

17 40.)  Thus, just as Rule 9(b)'s heightened pleading standard applies to Ms. Woodell's

18 allegations concerning mail and wire fraud, *see supra* § III.B.1., those same heightened

19 pleading standards apply to Ms. Woodell's allegations of the unfair or deceptive act

20 underpinning her CPA claim.  For example, in *Fidelity Mortgage Corp. v. Seattle Times*

21 *Co.*, 213 F.R.D. 573 (W.D. Wash. 2003), the plaintiff claimed that the defendant violated

22 the CPA by publishing "false, deceptive, and/or misleading Interest Rates."  *Id.* at 574.

The court explained that, "[e]ven with regard to complaints that do not specifically plead fraud, the Ninth Circuit has consistently held that cases that are 'grounded in fraud' or 'sound in fraud' must satisfy the particularity requirement of Rule 9(b)." *Id.* at 575. Thus, although Ms. Woodell avoids using the term "fraud" in describing her CPA claim (*see* Compl. ¶¶ 132-40), her CPA allegations are still governed by the heightened Rule 9(b) standard, *see Anderson v. Clow (In re Stac Elecs. Sec. Litig.)*, 89 F.3d 1399, 1405 n.2 (9th Cir. 1996) (noting that the failure to use the word "fraud" does not change the nature of the claim).

The court agrees with Ms. Woodell that the alleged mislabeling of the "Taxes & Fees" charge could constitute an unfair or deceptive act under the CPA. (*See* Resp. at 21 (citing *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 19 (Wash. 2007) (holding that the defendant engaged in an unfair or deceptive act or practice as a matter of law when it mislabeled a surcharge).) However, although Ms. Woodell pleads with particularity Expedia's involvement in this alleged deceptive act, *see supra* § III.B.1 (citing Compl. ¶¶ 12, 23, 39), her collective and generalized allegations concerning the remaining Defendants are insufficient under Rule 9(b), *see generally id.* Thus, for the same reasons that the court concluded that Ms. Woodell's allegations concerning the alleged "Taxes & Fees" misrepresentation meet Rule 9(b)'s pleading requirements for her RICO claims against Expedia, but not for her RICO claim against the other Defendants, *see supra* § III.B.1, the court also so concludes here concerning this element of her CPA claim.

//

2. <u>Impact on the Public Interest</u>

Ms. Woodell can establish impact on the public interest by showing that the conduct "injured other persons," or even "had the capacity to injure other persons." RCW 19.86.093. The court agrees with Ms. Woodell that she has not alleged an "essentially private dispute." *See Shugart v. GYPSY Official No. 251715, its Engines, Mach., Appurtenances*, No. 2:14-CV-1923RSM, 2015 WL 1965375, at *3 (W.D. Wash. May 1, 2015) ("Where a transaction can be characterized as essentially a private dispute rather than a consumer transaction, it may be difficult to show a public interest in the subject matter.") (internal quotations and citations omitted). Rather, she has alleged hundreds of thousands of similar transactions using the same alleged "Taxes & Fees" misrepresentation. (Compl. ¶¶ 8, 67.) These allegations are sufficient to meet this element of her CPA claim. The court, therefore, denies this portion of Defendants' motion.

3. <u>Proximate Causation</u>

Proximate cause is a required element of a CPA claim. *See Hangman Ridge*, 719 P.3d at 539 ("A causal link is required between the unfair or deceptive acts and the injury suffered by plaintiff."). As noted above in the court's discussion of proximate causation of Ms. Woodell's RICO claim, Ms. Woodell does not allege that she read or even noticed the "Taxes & Fees" charge, that the phrase would have affected her booking had she noticed it, what she would have interpreted the phrase to mean had she seen it, that she would not have completed the booking had she understood that Expedia would retain a portion of the amount listed as "Taxes & Fees," or that she would have taken any other

course of action other than the one she did.  *See supra* § III.B.5; (*see also* Compl.

¶¶ 46-53 (describing Ms. Woodell's alleged experience booking a hotel room through

Reservations.com).)  In other words, she does not allege that, except for Defendants'

alleged deceptive act, the outcome of her booking would have been any different.  Just as

the court concluded that Ms. Woodell failed to plead proximate cause for her RICO

claim, *see supra* § III.B.5, the court similarly concludes that she fails to plead proximate

cause for her CPA claim, as well.

Ms. Woodell nevertheless argues that the Washington Supreme Court's decision

in *Indoor Billboard/Washington* stands for the proposition that payment of an invoice

alone may be sufficient for proximate causation where the invoice contains an alleged

misrepresentation even without reliance.  (*See* Resp. at 22-23 (citing *Indoor*

*Billboard/Wash.*, 170 P.3d at 22.)  Although true, the *Indoor Billboard/Washington* court

also expressly rejected the plaintiff's argument that the court should "adopt a per se rule

and hold that payment of [the defendant's] invoice is per se sufficient to establish the

proximate cause of plaintiff's damages . . . because mere payment of an invoice may not

establish a causal connection between the unfair or deceptive act or practice and

plaintiff's damages."  *Id.*  Instead, the court formulated the test for proximate cause as

follows:  "A plaintiff must establish that, but for the defendant's unfair or deceptive

practice, the plaintiff would not have suffered an injury."  *Id.*  As discussed above,

because Ms. Woodell does not allege that, except for Defendants' alleged deceptive act,

the outcome of her booking would have been any different, she does not overcome this

pleading hurdle.

Further, in *Indoor Billboard/Washington*, the discussion of proximate cause arose in a distinct factual context—the plaintiff knew about and allegedly relied on the alleged misrepresentation, but independently investigated the alleged misrepresentation and decided to pay the invoice anyway. *Id.* at 22-23. "Because the record was insufficient to determine whether the CPA plaintiff would have paid the surcharge notwithstanding the deceptive billing practice (the parties disputed whether the plaintiff knowingly agreed to pay the charge), the court concluded a material issue of fact existed as to causation." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 900 (Wash. 2009) (interpreting *Indoor Billboard/Washington*). Therefore, "*Indoor Billboard*[*/Washington*] . . . holds that when the alleged injury is payment of an amount not actually owed, a plaintiff must prove the deceptive billing practice induced the payment to establish causation." *Id.* Merely alleging that Ms. Woodell paid the total amount charged for her hotel booking on Reservations.com does not establish this link. And, as discussed above, Ms. Woodell has not alleged any facts that otherwise establish this causal link. The court concludes that Ms. Woodell has not adequately alleged proximate causation for her CPA claim and, therefore, grants this portion of Defendants' motion.

**D.     Conversion**

Defendants assert that Ms. Woodell's claim for conversion should be dismissed because "[a]n 'authorized' payment by the payor is not the proper subject of the tort of conversion under Washington law. (MTD at 18 (citing *Alhadeff v. Meridian on Bainbridge Island, LLC*, 220 P.3d 1214 (Wash. 2009)).) Ms. Woodell does not respond to this portion of Defendants' motion and, indeed, implicitly concedes that Defendants'

motion to dismiss her conversion claim has merit.  (*See* Resp. at 24 (submitting "that—except with respect to the claim for conversion—[Defendants'] motion to dismiss should be denied").)  Accordingly, the court grants this aspect to Defendants' motion and dismisses Ms. Woodell's claim for conversion with prejudice and without leave to amend.

**E.  Unjust Enrichment and Constructive Trust**

The elements of a claim for unjust enrichment are:  (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.  *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008).  Similarly, "[a] constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if her were permitted to retain it."  *Proctor v. Forsythe*, 480 P.2d 511, 514 (Wash. Ct. App. 1971).  Defendants argue that because Ms. Woodell failed to adequately allege either a RICO or a CPA claim, "there is no basis to find that . . . Defendants' alleged retention of a portion of the 'Taxes & Fees' is somehow 'unjust' or 'inequitable.'"  (MTD at 20.)

The court disagrees.  The elements Ms. Woodell must allege for her RICO and CPA claims are distinct from her unjust enrichment and constructive trust claims.  *See supra* § III.B, C.  She need not allege either a RICO or a CPA claim to allege "circumstances" rendering inequitable Defendants' retention of the funds at issue for purposes of her unjust enrichment claim.  *See Young*, 191 P.3d at 1262.  Similarly, she

need not allege either a RICO or a CPA claim to adequately plead a claim for constructive trust. For a constructive trust, Ms. Woodell only needs to allege "some element of wrongdoing." *Baker v. Leonard*, 548, 843 P.2d 1050, 1055 (Wash. 1993). Further, although such wrongdoing is ordinarily found in the form of "fraud, misrepresentation, or bad faith, . . . [e]quity's need for flexibility requires that wrongdoing not be so limited." *Id.*

Specifically, Ms. Woodell alleges that "a reasonable consumer would expect that amounts collected as 'Taxes & Fees' would be the amounts imposed by taxing authorities," that such fees were "surreptitiously collected by Expedia or one of the other Defendants," that the amount collected "is *always* higher than the taxes remitted on the hotel rooms," and that "Expedia pockets the tax overcharge." (Compl. ¶¶ 34-35, 39, 45.) Thus, the court concludes that for purposes of her unjust enrichment and constructive trust claims, Ms. Woodell has sufficiently alleged "wrongdoing" or "circumstances" rendering Expedia's retention of the fees at issue inequitable—to wit, the collection and retention of a surreptitiously inflated charge.

However, to state a claim for either unjust enrichment or constructive trust, Ms. Woodell must allege that the defendant "retain[s] the benefit" or "hold[s] title to the property," respectively. *See Young*, 191 P.3d at 1262; *Proctor*, 480 P.2d at 514. Here, Ms. Woodell specifically alleges that "Expedia pockets the tax overcharge." (Compl. ¶ 39; *see also id.* ¶¶ 50 ("Expedia separately charged Plaintiff's credit card . . . the 'Taxes & Fees.'"); 52 ("Minimum of $8.31 illegally retained by Expedia as extra revenue."); 53 ("Expedia is illegally retaining millions of dollars in overcharges annually.").) Although

Ms. Woodell also alleges that "Defendants retained . . . these funds" and Defendants . . . retained the overcharge as extra revenue" (*id*. ¶¶ 121, 128), these generalized, collective allegations do not move her claims against EAN, Travelscape, and Hotels.com from the mere possible to the plausible—particularly given her specific allegations concerning Expedia. *See Iqbal*, 556 U.S. at 679. Accordingly, the court grants Defendants' motion to dismiss Ms. Woodell's equitable claims for unjust enrichment and constructive trust against EAN, Travelscape, and Hotels.com, but denies it with respect to Expedia.

**F.     Leave to Amend**

When dismissing a case for failure to state a claim, the district court "should grant leave to amend . . . unless [the court] determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)) (internal quotation marks omitted). Except with respect to her claim for conversion, *see supra* § III.D, the court cannot conclude, that Ms. Woodell is unable to cure the defects in her claims. Accordingly, the court grants Ms. Woodell leave to amend her complaint, including all of her claims except for conversion, within 20 days of the filing date of this order.

## IV.     CONCLUSION

As detailed above, the court GRANTS in part and DENIES in part Defendants' motion to dismiss (Dkt. # 15). The court DISMISSES Ms. Woodell's claim for conversion with prejudice and without leave to amend. The court DISMISSES her RICO and CPA claims but GRANTS her leave to amend these claims. The court DISMISSES her equitable claims for unjust enrichment and constructive trust against EAN,

Travelscape, and Hotels.com but GRANTS her leave to amend these claims. The court ORDERS Ms. Woodell to file an amended complaint within 20 days of the filing date of this order. If Ms. Woodell fails to timely file an amended complaint, the court will dismiss her RICO and CPA claims with prejudice and will dismiss her equitable claims for unjust enrichment and constructive trust against EAN, Travelscape, and Hotels.com with prejudice.

        Dated this 22nd day of July, 2019.

                                      JAMES L. ROBART
                                      United States District Judge